# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DOUGLAS GEORGE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | No. 05-2515-CM |
| ) | |
| **BOARD OF COUNTY COMMISSIONERS** ) | |
| **OF FRANKLIN COUNTY, KANSAS, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Douglas George brings this civil rights action against defendants, Board of County Commissioners of Franklin County, Kansas, the Commissioners individually—John Taylor, Donald Hay, Roy Dunn, and Donald Waymire—as well as Ron Henrickson, Sean Gooding, and Becky Ortega. Plaintiff alleges that by terminating his employment with Franklin County, defendants: (1) violated his constitutional rights to due process; (2) conspired to deprive him of civil rights; (3) retaliated against him in violation of the Fair Labor Standards Act ("FSLA"); (4) wrongfully discharged him; (5) breached his employment contract; and (6) committed gross negligence.[1] The case comes before the court on Plaintiff's Motion for Summary Judgment as to Counts 1, 2 and 5 of Plaintiff's Complaint (Doc. 35) and Defendants' Motion for Summary Judgment (Doc. 46). The court grants summary judgment for defendants on each of plaintiff's

---

[1] In Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Doc. 54), plaintiff conceded that Count VI of his claim—gross negligence—is "questionable" under Kansas law. Because plaintiff stated he will not pursue this claim, the court does not further address it.

claims involving federal questions and declines jurisdiction over plaintiff's remaining claims. Plaintiff's motion for summary judgment is denied as moot.

## I. BACKGROUND

Plaintiff began working for Franklin County, Kansas in August 1997. Plaintiff served as the Assistant Director of Franklin County Ambulance Services. In October 2002, plaintiff and a payroll clerk attended an employment law conference in Lawrence, Kansas. At the conference, plaintiff learned that Franklin County was possibly paying its ambulance staff overtime incorrectly. Plaintiff discussed this with his supervisor, Ted McCurdy, and the County Clerk, Shari Perry. After executive meetings, in which plaintiff did not participate, the county policy regarding overtime was changed in May 2003. In February 2005, the county investigated its policy change regarding the FLSA and plaintiff confirmed his prior discussions on the matter. It appears this investigation responded to a lawsuit for backpay brought by three former county employees and one current employee. Plaintiff was not involved in the later lawsuit. One month later, March 2005, the county self-reported that it had been in violation of the FLSA. Approximately three months later, the county paid $225,000 in overtime claims under the FLSA.

That summer, Ted McCurdy retired as the Director of Franklin County Ambulance Services. Although plaintiff applied for the position, Sean Gooding was selected as the new director. Mr. Gooding told plaintiff he had no plans to "get rid" of him.

On September 15, 2005, plaintiff was terminated. He was presented with a document labeled "Agreement and General Release," which he did not sign. Plaintiff did not receive severance pay. The parties dispute whether plaintiff's termination was in accordance with his employee handbook.

Plaintiff received the handbook in January 2004. The first page of the handbook states that it does

not create an employment contract and that county employees are employees at-will. Plaintiff stipulated that during his employment with Franklin County, plaintiff did not have a written employment contract, nor did any member of the Board promise plaintiff permanent employment.

However, a provision in the handbook also provides instructions for which factors should be considered if "it is necessary to reduce the number of employees." Although the parties debate the relevance of this provision, whether this provision was followed is immaterial to this holding.

## II.     STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see Adler*, 144

F.3d at 671 n.1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. ANALYSIS

#### A. Count I—Deprivation of a Property Interest Without Due Process of Law

To establish a claim for deprivation of procedural due process, plaintiff must show: (1) that he possessed a protected property interest; and (2) that he was not afforded an "appropriate level of process." *Schulz v. City of Longmont*, 465 F.3d 433, 443 (10th Cir. 2006). To have a property interest, plaintiff must have more than an abstract desire or a unilateral expectation. Instead, plaintiff must have a legitimate claim of entitlement, which is defined by a source independent from the Constitution, such as state law. *Id.* While the existence of a property interest can be determined by state law, whether the property interest is protected remains a federal constitutional question. *Id.* at 444–45 (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)).

In the context of public employment, whether plaintiff has a legitimate claim of entitlement is determined by whether the plaintiff is an at-will employee. *E.g.*, *Ney v. City of Hoisington*, No. 05-4059-JAR, 2007 WL 608263, at *10–11 (D. Kan. Feb. 22, 2007); *Zwygart v. Bd. of County Comm'rs of*

*Jefferson County*, 412 F. Supp. 2d 1193, 1199 (D. Kan. 2006) ("As a public employee asserting an entitlement to continued employment based on an implied-in-fact contract, 'the touchstone is whether, under state law, the employee has a 'legitimate claim of entitlement' in continued employment' . . . ."). If plaintiff is an employee at-will, there is no protected property interest in employment. *Getz v. Bd of County Comm'rs of the County of Shawnee*, 194 F. Supp. 2d 1154, 1167 (D. Kan. 2002). Whether plaintiff is an employee at-will is determined by Kansas law. *Crowley v. City of Burlingame*, 352 F. Supp. 2d 1176, 1181–82 (D. Kan. 2005).

Under Kansas law, public employment is presumed to be at-will employment. *Zwygart*, 412 F. Supp. 2d at 1199 (citing *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 537 (10th Cir. 1995)). Kansas law, however, also recognizes that an employer can create employment that is not at-will— thereby creating a property interest—with a written[2] or implied contract. *Id.* The question becomes "'whether the parties intended to enter into an agreement restricting the employer's ability to terminate its employees at will. The employee's subjective expectation of continued employment is not enough.'" *Id.* (quoting *Emerson v. Boeing Co.*, No. 94-3125, 1995 WL 265932, at *1 (10th Cir. May 8, 1995)). The parties' mutual intent is determined by the totality of the circumstances, ordinarily becoming a fact question for the jury. In cases where the plaintiff fails to assert facts demonstrating mutual intent, however, summary judgment is appropriate. *Id.*; *Ney*, 2007 WL 608263, at *11.

Kansas law provides some guidance for examining the totality of the circumstances surrounding the parties' intent. Important factors include:

> written or oral negotiations, the conduct of the parties from the commencement of the employment relationship, the usages of the business, the situation and objective of the

---

[2] Here, the parties agree that plaintiff did not have a written employment contract.

parties giving rise to the relationship, the nature of the employment, and any other circumstances surrounding the employment relationship which would tend to explain or make clear the intention of the parties at the time said employment commenced.

*Najim v. City of Wichita*, No. 04-1399-WEB, 2005 WL 2043426, at *2 (D. Kan. Aug. 24, 2005) (quoting *Morriss v. Coleman Co.*, 738 P.2d 841, 849 (Kan. 1987)). While the contents of an employee handbook are relevant, they are not dispositive. *Stover v. Superior Indus. Int'l, Inc.*, 29 P.3d 967, 971–72 (Kan. Ct. App. 2000). Moreover, unless a written policy is bargained for, such a policy, by itself, is insufficient to establish an implied contract. *Getz*, 194 F. Supp. 2d at 1167. Similarly, "procedural guarantees in a handbook cannot create a property interest to which due process requirements apply." *Burns v. Bd. of County Comm'rs of County of Jackson*, 197 F. Supp. 2d 1278, 1287 (D. Kan. 2002) (citing *Bunger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 991 (10th Cir. 1996)).

Here, defendants argue that plaintiff's claim must fail because he was an employee at-will, and therefore did not have a protected property interest. Defendants point to the first page of the employee handbook, which states "[y]our employment with Franklin County is at-will employment." Defendants also stress that plaintiff stipulated that "[n]o member of the Board of County Commissioners promised Plaintiff permanent employment." Plaintiff responds that he was not an employee at-will. However, plaintiff provides no evidence related to the parties' mutual intent. Instead, plaintiff's argument to support this contention entirely rests upon a provision in the handbook that provides instructions for which factors should be considered if "it is necessary to reduce the number of employees."

Plaintiff's argument fails for two reasons. First, plaintiff does not allege that he bargained for this provision. Thus, the provision, by itself, cannot establish an implied contract. Second, this provision is procedural. Plaintiff characterizes the instructions as "certain procedural rights" and "a specific lay-off

procedure." Although plaintiff contends that he "has met the burden to establish that he had a protected property interest in his employment with Franklin county and particularly . . . that certain procedures would be followed," procedural guarantees are not protected property interests, and they cannot create protected property interests. Because plaintiff has neither alleged nor argued any facts that could create an implied contract, plaintiff was an employee at-will. Consequently, his termination did not deprive him of a protected property interest. Defendants' request for summary judgment on Count I is granted.

**B.     Count II—Conspiracy in Violation of 42 U.S.C. § 1985(3)**

Plaintiff alleges that defendants conspired to deprive him of his civil rights in violation of 42 U.S.C. § 1985(b). This section prohibits conspiracies "'motivated by some racial, or perhaps other class-based, invidiously discriminatory animus.'" *Cont'l Coal, Inc. v. Cunningham*, No. 06-2122-KHV, 2007 WL 689585, at *16 n.11 (D. Kan. Mar. 2, 2007) (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)). The Tenth Circuit narrowly construes what qualifies as a class sufficient to merit "class-based" protection under this section. *Busey v. Bd. of County Comm'rs of the County of Shawnee*, 277 F. Supp. 2d 1095, 1112 (D. Kan. 2003). Classes relating to commercial or economic interests or political affiliation do not qualify. *Id.*; *King v. Keller*, No. 06-4001-SAC, 2006 WL 1517765, at *5 (D. Kan. May 30, 2006) (citing *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 n.13 (10th Cir. 2006) and *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 837 (1983)).

If plaintiff is part of a protected class, plaintiff must also establish: (1) a conspiracy; (2) to deprive him of equal protection or equal privileges and immunities; (3) an act furthering the conspiracy; and (4) resulting injury. *Hamby v. Marks*, No. 06-5043, 2007 WL 458011, at *12 (10th Cir. Feb. 13, 2007) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)).

Defendants argue that plaintiff has failed to establish that he is a member of a qualifying class. Plaintiff responds that the qualifying class of which he is a member is "the workers who speak out" under the FLSA. This argument proposes that because the FLSA is intertwined with First Amendment protections and designed to prevent "a legalized slavery," plaintiff is part of a class that is "intended to be and are protected from retaliation for speaking out against government abuse." Plaintiff cites no legal support other than Judge McKay's dissent in *Brown v. Reardon*, 770 F.2d 896, 906 (10th Cir. 1985). This case, however, did not address any class status for persons exercising rights under the FLSA.

Plaintiff is not a member of a class that merits protection under § 1985(3). Plaintiff has not provided any support for his argument that FLSA advocates are a protected class. Such a class relates only to commercial or economic interests. Plaintiff's argument is similar to an argument advanced in *Steinert v. Winn Group, Inc.*, 83 F. Supp. 2d 1234, 1239 (D. Kan. 2000). In *Steinert*, the plaintiff alleged that he was a member of an employee class who by the defendant's actions endured a "condition of involuntary servitude." *Id.* In that case, this court recognized that the "cohesive element of the class identified is a need for employment and an affiliation with the defendants." *Id.* Here, the cohesive elements again would be a need for employment and a right to economic benefits. Plaintiff's warning of "legalized slavery" mirrors the *Steinert* plaintiff's allegations of "involuntary servitude." The Tenth Circuit viewed the section 1985 claim in *Steinert* as "patently meritless." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 (10th Cir. 2006). Because plaintiff is not a member of a class protected by § 1985(3), defendants' request for summary judgment on Count II is granted.

**C.      Count III—Retaliation in Violation of the FLSA, 29 U.S.C. § 215(a)(3)**

Plaintiff alleges that defendants terminated his employment in retaliation for his actions related to the

-8-

FLSA. The Tenth Circuit analyzes FLSA retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). First, plaintiff must establish a prima facie case by establishing that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Byrne v. Gainey Transp. Servs. Inc.*, No. 04-2220-GTV, 2005 WL 1213667, at *3 (D. Kan. May 18, 2005) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997)). If a prima facie case is established, the burden shifts to the employer to provide a legitimate reason for the adverse employment action. If a legitimate reason is provided, the burden returns to the plaintiff to show that the provided legitimate reason is pretextual. *Conner*, 121 F.3d at 1394.

Here, defendants argue that plaintiff cannot establish the prima facie case because plaintiff never engaged in protected activity. Although the statutory language only protects employees who have "'filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee,'" the Tenth Circuit has not read this section "literally." *Id.* (quoting 29 U.S.C. § 215(a)(3)). An "unofficial assertion of rights through complaints at work" is protected activity. *Id.* This assertion of rights, however, must be a personal complaint and "adverse to the company." *Id.* Restated, "to engage in protected activity under [the FLSA], the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486–87 (10th Cir. 1996).

-9-

Plaintiff responds that he has engaged in protected activity by noting that "plaintiff had reported that the County was not paying Ambulance Services personnel correctly under the [FLSA]." Plaintiff contends this report lead to an investigation and a "cover up." Additionally, plaintiff claims that plaintiff engaged in protected activity during a 2005 investigation, "wherein Plaintiff certainly informed . . . of his prior protected activity." The cited record provides some clarification for plaintiff's activities. According to the affidavit of plaintiff's supervisor, Ted McCurdy, "[plaintiff and McCurdy] did discuss the FLSA issues and how the employees were being paid on numerous occasions. At one point, I directed [plaintiff] to speak with Shari Perry about our concerns to get her input as Ms. Perry handled the payroll at the time in question." Shari Perry's affidavit confirms this by noting, "[plaintiff] was one of two employees that after attending a seminar in Lawrence[,] Kansas, approached me and indicated that the County was not paying the Ambulance Service personnel correctly . . . . [Plaintiff] mentioned this . . . several times after that." Plaintiff does not provide any clarification, or citation, to explain how his 2005 interview was protected activity.

Although plaintiff tries to compare his situation to the facts of *Conner v. Schnuck Markets, Inc.*, the court finds that the present facts more closely resemble the facts of *McKenzie v. Renberg's, Inc.* In *Conner*, the Tenth Circuit discussed and distinguished *McKenzie*, by noting:

> In *McKenzie*, the plaintiff was employed as a personnel director "who never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company." In this case, Conner has no management responsibilities regarding the calculation of overtime wages, and, therefore, Conner's request for overtime wages was "adverse to the company" and was a personal complaint about the wage and hour practices of [his] employer."

*Conner*, 121 F.3d at 1394 (citations omitted). Moreover, in *Conner*, the plaintiff was not the individual who initially reported that the employer was paying overtime incorrectly; instead he filled out an individual

-10-

survey related to his overtime pay. *Id.* at 1392. In *McKenzie*, a co-worker of plaintiff attended a seminar on wage and hour laws and provided these materials to plaintiff, who was the company's personnel director. The two discussed their concerns about whether the employer was paying overtime incorrectly and reported their concerns to the company attorney, and later discussed the issue with the company president. *McKenzie*, 94 F.3d at 1481. Similar to the facts of *McKenzie*, plaintiff, and a payroll clerk, attended an employment law conference and then reported his findings to his supervisor and the person in charge of payroll. He did not assert an individual complaint regarding his overtime. Thus, plaintiff has not alleged that he stepped out of his role representing his employer or asserted rights adverse to the employer. Consequently, plaintiff did not engage in a protected activity and cannot establish a prima facie case for retaliation under the FLSA. Defendants' request for summary judgment on Count III is granted.

**C.     Remaining Claims**

The remaining claims do not involve matters over which this court has original jurisdiction. Because the court has dismissed the prior claims, the court declines to exercise supplemental jurisdiction over these remaining state law claims. 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Plaintiff's state law claims are dismissed without prejudice. The court notes that there is an outstanding motion for attorneys' fees related to discovery. This motion has been referred to Magistrate Judge Waxse and will remain pending.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 46) is granted on Counts I, II, and III. The remaining claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment as to Counts 1, 2

and 5 of Plaintiff's Complaint (Doc. 35) is denied as moot.

**IT IS FURTHER ORDERED** that plaintiff's remaining claims are dismissed without prejudice.

Dated this  26th   day of March 2007, at Kansas City, Kansas.

                                             **\s\ Carlos Murguia**
                                             **CARLOS MURGUIA**
                                             **United States District Judge**